UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAYMOND M.,[1] | ) |
| Plaintiff, | ) Case No. 21 cv 0382 |
| v. | ) Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Raymond M. appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying him disability benefits under Title II of the Social Security Act. Plaintiff filed a Memorandum in Support of Reversal/Remand, which the Court construes as a motion for summary judgment; the Commissioner filed a cross-motion for summary judgment. For the following reasons, Plaintiff's motion (Dkt. 23) is granted, and the Commissioner's cross-motion (Dkt. 26) is denied. The case is remanded for further proceedings consistent with this opinion.

**I.    Background**

Plaintiff filed for disability insurance benefits on November 13, 2018, alleging a disability onset date of July 15, 2015. (Administrative Record ("R.") 20.) Plaintiff's application was denied initially and upon reconsideration. (*Id.*) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 3, 2020. (*Id.*) On July 1, 2020, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled as defined by the Social Security Act. (R. 20-36.) On November 23, 2020 the Appeals Council denied Plaintiff's request for review (R. 1-3), leaving

---

[1]   In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

the ALJ's decision as the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g); *see Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ's opinion followed the five-step analytical process required by 20 C.F.R. § 404.1520. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged onset date +of July 15, 2015, through his date last insured ("DLI") of December 31, 2017. (R. 23.) At Step Two, the ALJ found Plaintiff had the severe impairment of chronic obstructive pulmonary disease ("COPD"). (*Id.*) At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 25.) Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to work at the full range of exertional levels with the only limitation being avoiding concentrated exposure to lung irritants. (R. 30.) At Step Four, the ALJ determined that Plaintiff was incapable of performing his past relevant work as a carpenter. (R. 34.) At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy Plaintiff can perform, given his age, education, work experience, and RFC. (R. 35.) Because of these determinations, the ALJ found Plaintiff not disabled under the Social Security Act. (R. 35-36.)

As noted above, Plaintiff suffers from COPD. Unfortunately for Plaintiff, the evidence that pre-dates his DLI is rife with subjective complaints, but light on objective evidence. For example, in October 2016, Plaintiff reported he was "having a hard time getting through the day" because he would become short of breath on exertion and could not walk more than half a mile without losing his breath. (R. 27.) One month later, he continued to experience shortness of breath, despite having been prescribed Spiriva, although rest improved his shortness of breath; he was prescribed a second daily-use inhaler (Advair). (R. 28.) In January 2017, Plaintiff claimed his breathing had slightly improved, but his doctor noted that he "suspect[ed that Plaintiff's] COPD may be quite advanced,"

and that Plaintiff would eventually need to have pulmonary rehabilitation. (*Id*.) In April 2017, Plaintiff continued to report dyspnea on exertion; while a referral for pulmonary rehabilitation was suggested, Plaintiff claimed he wanted to attempt to improve his exercise capacity on a home treadmill. (R. 29.) When Plaintiff followed up with his primary care physician in August 2017, he reported having a "tough time" because he had cut the grass that day, and stated he would get "very dyspneic" on exertion. (*Id*.)

However, the portion of the medical record that pre-dates Plaintiff's DLI is essentially bereft of objective tests or laboratory findings that might bolster these subjective complaints.[2] The first such test in the record is a CT study from July 2018, showing "very small" nodules on Plaintiff's lungs. (R. 27.) Additionally, in April 2019, Plaintiff had a six-minute walk test and pulmonary function test performed; based on those results, Plaintiff required one liter per minute of supplemental oxygen during exertion. (R. 375.) In October 2019, Plaintiff was admitted to the hospital for respiratory failure and required sedation and intubation; ultimately, he required a tracheostomy and was hospitalized for several months before his eventual discharge. (*See generally* R. 273-11,308.)

The ALJ's conclusions are based primarily on the fact that Plaintiff's medical record prior to his DLI is fairly sparse. At the outset of her RFC discussion, the ALJ wrote the following:

> The undersigned acknowledges the severity of the claimant's respiratory impairment has progressed. The treatment record shows that in April 2019, he was prescribed use of oxygen with exertion and in October 2019 began a long hospitalization for treatment of respiratory failure secondary to COPD and pneumonia, as well as other medically determinable impairments that developed.
>
> However, under Title II, an adjudicator is required to make a determination of whether an impairment is severe, the extent of limitation the symptoms of that impairment impose, and whether symptom-related limitations affected the claimant prior to or on the

---

[2]   Apparently, a pulmonary function test was completed at some point prior to January 2017, because Plaintiff's primary care physician noted that his pulmonary function test was "consistent with COPD," but those test results are not in the administrative record. (R. 28.)

3

>  date last insured. The evidence does not show the extent of limitation
>  to which he testified prior to or on the date last insured.

(R. 31.)

The ALJ's conclusions were supported by the lack of documentation of Plaintiff struggling to breathe while at rest in his doctor's office during examinations in 2016 and 2017.[3] (R. 27-29, 31.) The ALJ found the treating physician opinions Plaintiffs submitted into the record had no persuasive value because they were completed in 2019, after the DLI. (R. 33.) Similarly, the ALJ found Plaintiff's family's statements "provided no insight into the claimant's functioning during the period at issue and not persuasive for the period prior to or on December 31, 2017" because they primarily discussed Plaintiff's post-hospitalization function. (R. 34.)

## II. Social Security Regulations and Standard of Review

To be eligible for disability insurance benefits, an applicant must prove that he is disabled under the Social Security Act as of his date last insured ("DLI"). *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). ALJs conduct a sequential five-step inquiry to determine whether a claimant is legally disabled, asking (1) Is the claimant unemployed? (2) Does the claimant have a severe impairment? (3) Does the claimant's impairment meet or equal an impairment specifically listed in the regulations? (4) Is the claimant unable to perform a former occupation? and (5) Is the claimant unable to perform any other work in the national economy? *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (internal quotations omitted); *Young*, 957 F.2d at 389. The claimant bears the burden of proof at steps one through four.

---

[3] The Court is not certain how Plaintiff's breathing while at rest would shed light on his ability to breathe while doing work at all exertional levels.

4

*Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). At the final step, the burden shifts to the Commissioner; if she shows that the claimant can "perform work that exists in a significant quantity in the national economy," the claimant is not disabled. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

In disability benefits cases, the scope of a court's review is limited to determining whether the Commissioner's final decision adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing an ALJ's decision, the Court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the" ALJ. *Clifford*, 227 F.3d at 869. Although the Court's review is deferential, *Steele v. Barnhart*, 290 F.3d 936, 938 (7th Cir. 2002), the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusions. *Id.* at 941 (internal citation and quotations omitted).

**III.  Discussion**

The ALJ erred by failing to adequately consider the post-DLI evidence and its potential relevance to Plaintiff's condition prior to his DLI. The ALJ should "either have determined whether the plaintiff's ailments are at present totally disabling, and, if so, have retained a medical expert to estimate how grave her condition was [before the DLI]; or the judge should have determined directly whether the plaintiff was totally disabled by then – but in making that determination he must (as under the first approach) consider all relevant evidence, including the evidence regarding the plaintiff's condition at present." *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010). Medical evidence after the DLI is relevant and probative regarding the status of a claimant's condition during the period of coverage. *See Ritacco v. Berryhill*, 2017 WL2215016, at *4 (N.D. Ill. May 19, 2017)

5

("The Seventh Circuit has stated that post-DLI evidence may be probative of the claimant's condition within the relevant period.")

Although the ALJ briefly mentioned the results of Plaintiffs six-minute walk test and pulmonary function test in April 2019, and significant and lengthy hospitalization in the fall of 2019, there is no meaningful analysis of that evidence. There is no discussion regarding Plaintiff's condition at the present time, which is required under Seventh Circuit case law. Instead, the ALJ simply chose not to analyze the post-DLI evidence. For instance, she found that Plaintiff's treating physician's statement were "unpersuasive" because they were written in 2019, and that Plaintiff's family's impact statements "provided no insight into the claimant's functioning during the period at issue…." (R. 33-34.)

This failure to consider post-DLI evidence is in contravention to Seventh Circuit law; the post-DLI evidence is relevant to determining the extent and nature of Plaintiff's COPD during the relevant period and must be considered. This is especially true where the claimant suffers from a chronic, degenerative condition such as COPD. The ALJ's error in this case is particularly troubling to the Court because she found that Plaintiff could perform work at all functional levels. Considering that Plaintiff required supplemental oxygen on exertion and a months-long hospital stay for respiratory failure in 2019, and was consistently reporting dyspnea with exertion during the relevant time period, the Court believes the post-DLI functioning would be extremely relevant on whether Plaintiff could perform work at, for example, the "very heavy" exertional level (which requires lifting objects over 100 pounds and frequently lifting and carrying objects over 50 pounds during an eight-hour five-day workweek) during 2017.[4] As noted in *Parker*, if the ALJ opted not to retain a medical expert to estimate the gravity of Plaintiff's condition prior to the DLI,[5] she was required

---

[4] 20 C.F.R. § 404.1567(e).
[5] Although it is left to the ALJ's discretion to call a medical expert, the Court notes it would likely be the prudent course of action in this case given the severity of Plaintiff's post-DLI decline and the dearth of pre-DLI objective testing.

to consider all relevant evidence, including post-DLI evidence, in determining Plaintiff's limitations during the relevant time period. The Court finds the ALJ failed to do so here, and the case should be remanded to address this issue.

### IV. Conclusion

For the following reasons, Plaintiff's motion (Dkt. 23) is granted, and the Commissioner's cross-motion (Dkt. 26) is denied. The case is remanded for further proceedings consistent with this opinion.

Entered: August 26, 2022

_____
Susan E. Cox,
United States Magistrate Judge